**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **BRADLEY ESTEY**, on behalf of himself and all others similarly situated, | Civil Case No.: 1:16-cv-03141-AT |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| **ADT LLC; and** | |
| **IPACESETTERS LLC,** | |
| Defendants. | |

## INTRODUCTION

1.     This action arises out of Defendant iPacesetters, LLC's ("IPS") practice of placing telemarketing calls, on Defendant ADT LLC's ("ADT") (collectively, "Defendants") explicit instructions and behalf, to individuals without instituting procedures which comply with the minimum standards set forth for telemarketing calls, including their failure to document and honor do not call requests, and the use of an autodialer to make such calls in the absence of consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.     Plaintiff Bradley Estey is one such recipient of Defendants' spam

telephone calls.

3.      Despite Plaintiff never providing express written consent for autodialed telemarketing calls from Defendants, Defendants made such calls to Plaintiff's cellular telephone, and continued after Plaintiff asked Defendant to stop.

4.      All of these telephone calls were placed without the prior express written consent of Plaintiff Estey.

5.      All of these calls were placed using an automatic telephone dialing system, and none of these calls were placed for an emergency purpose.

6.      Furthermore, Defendants failed to implement adequate policies and procedures to place telephone numbers on their internal "do-not-call" list, and/or failed to honor his request to be placed on their internal "do-not-call" list, in violation of 47 C.F.R. § 64.1200(d).

7.      Accordingly, Plaintiff brings this TCPA action on behalf of himself and proposed classes of similarly situated individuals for Defendants' violations of the TCPA.

## PARTIES AND JURISDICTION

8.      This Court has personal jurisdiction over Defendants because Defendants conduct significant amounts of business within this District and their wrongful conduct was directed at this District.

9.     Plaintiff is, and at all times mentioned herein was, a citizen and resident of DeKalb County, Georgia.

10.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

11.     Defendant ADT LLC is, and at all times mentioned herein was, a Delaware corporation headquartered at 1501 Yamato Rd, Boca Raton, FL 33431.

12.     Defendant ADT LLC is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

13.     Defendant iPacesetters, LLC is, and al all times mentioned herein was, a corporation headquartered at 135 Chestnut Ridge Road, Montvale, NJ 07645.

14.     Defendant iPacesetters, LLC is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## FACTS

15.     Defendants have placed numerous telephone calls to Plaintiff's cellular telephone number – 770-###-1389 – from their telephone numbers, including, but not limited to, 1-800-238-2727 and 1-800-898-4754.

16.     The 1-800-238-2727 telephone number is the same number Defendant ADT uses to call Plaintiff when his alarm system has been triggered. Thus,

Plaintiff was unable to reasonably block this number.

17.     Many of these calls were made by Defendant iPacesetters, on Defendant ADT's explicit instructions and behalf.

18.     All of these calls were in an effort to schedule an appointment with Plaintiff to convert his current security system, which works on the 2G cellular network, to a 3G (or better) system, in light of network providers phasing out the 2G network.

19.     These 2G conversion upgrades are purportedly done free of charge.

20.     However, while the free 2G conversions are one purpose of the calls, Defendant ADT uses the conversion appointments made on these telephone calls in an attempt to "upsell" customers on premium systems, such as the ADT Pulse, which are not free.

21.     This is evident from the call scripts used for several of the calls, on which ADT's and iPacesetters representatives stated, in part:

> I am calling today to follow up on a recent letter that ADT mailed to you regarding the cellular communicator of your security system. Mr. Estey, I am reaching out to inform you that your system currently uses 2G wireless technology, which cellular carriers will be phasing out and moving all networks to 3G technology. Therefore, your security system's 2G unit needs to be replaced. Now, Mr. Estey, I am going to make it easy for you to get your new 3G unit installed at no cost, **and possibly upgrade your system to continue to keep your home safe.**

22.     Further, Defendant ADT freely and publicly admits the telemarketing

purpose of its calls. For example, in its Q1 2016 Conference Call, Defendant ADT stated: "In Q1 we incurred $24 million of radio conversion costs as we successfully converted 124,000 2G customers, a portion of which we were able to upsell to ADT Pulse."

23.     Similarly, in its Q2 2015 Conference Call, Defendant ADT stated: "In Q2 we continued to make progress on our 2G radio conversion project, upgrading 82,000 customers, a portion of which we were able to upsell to ADT Pulse."

24.     In an investor day presentation dated May 14, 2015, Defendant ADT wrote, on a slide titled "Improving Attrition: We Have Significantly Increased Pulse Among New & Existing Customers", that it "[l]everaged 2G to 3G conversion opportunities to upgrade to Pulse."

25.     In light of the call script and these public comments, upon information and belief, Defendant ADT uses, trains, and/or instructs its employees and agents to use the 2G conversion calls to attempt to upsell customers to more premium models.

26.     These dual purpose calls are telemarketing under the TCPA, which defines telemarketing as "the initiation of a telephone call or message <u>for the purpose of</u> encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 CFR § 64.1200(f)(12).

27.     Accordingly, Defendant ADT was required to obtain prior express written consent prior to making these autodialed telemarketing calls, and/or prior to instructing anyone else to make autodialed telemarketing calls on its behalf.

28.     Plaintiff never gave either Defendant such consent.

29.     Furthermore, because Plaintiff never agreed to the calls and did not want the calls, Plaintiff asked Defendants on numerous occasions to stop calling him.

30.     For example, on May 19, 2016 on a call from Defendant using telephone number 1-800-238-2727, Plaintiff asked Defendants, through representative, Ataya (employee identification number 132313) to stop calling.

31.     Since then, Defendants have called at least 18 times.

32.     Thus, not only were none of the calls made with Plaintiff's prior express written consent, calls made to Plaintiff after no later than May 19, 2016 were made after Plaintiff had revoked any consent.

33.     All of these calls were placed using an "automatic telephone dialing system" as defined at 47 U.S.C. § 227(a)(1) and as explained in subsequent FCC regulations and orders. The system(s) used by Defendants has/have the capacity to store numbers, generate numbers to be called from the stored database randomly or in a sequence, and to dial those numbers.This is evidenced by:

- The inability to stop the calls;

- The frequency of the calls;

- The large number of calls Defendants were required to make, making it likely Defendants chose automated mechanisms to make those calls;

- A brief and unnatural pause from the time Plaintiff answers the calls until the time Defendants' agent comes on the line (for example, Defendant would not appear on the line until Plaintiff's second "hello");

- That none of the calls were initiated using human intervention to generate the numbers to be called.

34.    These calls were not made for any emergency purpose.

35.    In addition, Defendants are required to implement policies and procedures to record "do-not-call" requests, and honor those requests within no more than thirty (30) days of the request. 47 CFR § 64.1200(d)(3).

36.    These policies were required to be in place *prior* to making any telemarketing calls.

37.    Of the at least 18 calls Defendants made to Plaintiff after his "do not call" request, 13 occurred after the expiration of the 30-day period.

38.     Accordingly, either Defendants failed to place Plaintiff's telephone number on their internal "do-not-call" list, or they did so, but failed to honor the internal "do-not-call" list.

39.     Defendants had no policy in place to treat revocations of consent on the 2g to 3g conversion calls as requests to be on a do not call list, or had an affirmative policy to ignore such requests when those requests were made on the 2g to 3g conversion calls.

40.     Indeed, in its discovery responses, Defendant ADT has stated that Plaintiff's statement "I don't want to have calls from you anymore" on one of the 2g to 3g conversion calls would not "necessitate adding that customer's cell phone number to ADT's 'Do Not Call' list."

41.     Defendants are also required to maintain a record of a consumer's request not to receive further telemarketing calls and to honor this request for five years. They did not do so.

42.     Upon information and belief, Defendants also failed to train their personnel or vendors on the existence and use of their internal "do-not-call" requests.

43.     While Defendants may have had a general "do not call" list, they failed to treat requests to "stop calling" received on their 2G to 3G conversion calls

in accordance with that list, and thus, requests made during such calls were not added to the list and calls continued.

44.    This failure to maintain adequate policies and procedures to record or comply with "do not call requests," maintain a "do-not-call" list, and/or failure to train their personnel and vendors on the existence and use of the list, violate the regulations promulgated pursuant to 47 U.S.C. § 227(c), a separately actionable provision of the TCPA for which liability attaches when two or more calls are made in violation of the "do not call" provisions of the statute.

45.    Additionally, because Defendants were required to have instituted policies and procedures to effectively record, honor, and maintain internal "do-not-call" requests, and to have trained personnel on the existence of the list, prior to making any telemarketing calls, and they did not, all of their "2G to 3G conversion" telemarketing calls were made in violation of the TCPA, regardless of the equipment used.

46.    While Defendant IPS made many of the calls, and its own policies and procedures were legally deficient, it did so on Defendant ADT's behalf, for the benefit of ADT, and with ADT's full cooperation.

47.    Furthermore, Defendant ADT had no policies in place to ensure that its own "do not call" list policies, if any, were being complied with for the calls

made by Defendant IPS on its behalf.

48.    IPS was acting as an agent of ADT and at the direction of ADT in initiating the calls.

49.    ADT provided IPS with access to customer information that would ordinarily be within ADT's exclusive control for the purposes of making the calls at issue.

50.    ADT permitted IPS to use ADT's name and to enter customer information, such as conversion/sales appointment times, into ADT's customer information systems.

51.    ADT assisted with the preparation and review of call scripts for the calls and authorized such scripts.

52.    ADT knew IPS was making calls on its behalf to set up conversion/sales appointments, and knowingly accepted the benefits of such appointments.

53.    Defendant ADT is therefore vicariously liable for any violations of the TCPA by Defendant IPS.

54.    In the alternative, ADT was so involved in the initiation of the calls at issue to make it directly, rather than vicariously, liable for the calls initiated by IPS. This involvement would include specific and comprehensive instructions as to

the timing and manner of such calls.

55.     Plaintiff has suffered actual injury as a result of Defendants' telephone calls, including, but not limited to:

- The invasion of a substantive legal right not to receive autodialed calls and post-revocation calls granted by the TCPA;

- The occupation and trespass upon Plaintiff's telephone and telephone line;

- Device storage;

- Lost time tending to and responding to the unsolicited calls;

- Invasion of privacy. including but not limited to the intrusion upon Plaintiff's seclusion; and

- Nuisance.

56.     Plaintiff is entitled to statutory damages, actual damages, and injunctive relief.

57.     Specifically, Plaintiff is entitled to at least $500 for each violation of 47 U.S.C. § 227(b).

58.     Plaintiff is separately entitled to up to $500 for each violation of 47 U.S.C. § 227(c).

59.     Plaintiff is also entitled to treble damages for each willful or knowing

violation of the TCPA.

60.     Defendants' actions were willful because Defendants made the calls of their own volition to a number they knew, or should have known, was a cellular telephone number, and knew, or should have known, that they were required to maintain, comply with, and train their employees on the existence of their internal do-not-call list, and failed to do so.

61.     Defendants' actions were knowing violations of § 227(b) because Defendants' knew they were placing calls to cellular telephones, knew they were using an automatic telephone dialing system, and knew or should have known they did not have consent, and knew or should have known that they were required to maintain, comply with, and train their employees on the existence of their internal do-not-call list, and failed to do so.

62.     Accordingly, Plaintiff is entitled to $1,500 for each violation of § 227(b).

## CLASS ACTION ALLEGATIONS

## ATDS CLASS

63.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed class, defined as follows:

> Plaintiff and all persons within the United States to whose cellular telephone number Defendant ADT LLC

placed (or had placed on its behalf) since October 16, 2013, a telephone call as part of its 2g to 3g conversion campaign, using the same or similar dialing system used to call Plaintiff, when Defendants' records show no prior express written consent to call that telephone number or Defendants' records show a request to stop calling that telephone number.

("ATDS Class")

64.    Excluded from the class are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families.

65.    The Class members for whose benefit this action are brought are so numerous that joinder of all members is impracticable.

66.    The exact number and identities of the persons who fit within the class is ascertainable in that Defendants maintain written and electronically stored data showing:

    a. The time period(s) during which Defendants placed their telephone calls;

    b. The telephone numbers to which Defendants placed their telephone calls;

    c.  The telephone numbers for which Defendants had prior express written consent;

    d.  The telephone numbers associated with any "stop calling" requests (although not properly maintained or honored);

    e.  The equipment and systems used to make each call.

67.    The Class is comprised of thousands, if not millions, of individuals nationwide.

68.    There are common questions of law and fact affecting the rights of the Class members, including, *inter alia*, the following:

    a.  Whether Defendants used an automatic telephone dialing system;

    b.  Whether Defendants took adequate steps to acquire and/or track consent;

    c.  The purpose(s) of Defendants' calls;

    d.  Whether Defendants should be enjoined from engaging in such conduct in the future.

69.    Plaintiff is a member of the class in that Defendants placed telemarketing calls to his cellular telephone using an automatic telephone dialing system, including calls placed after Plaintiff asked Defendants to stop calling.

70.     Plaintiff's claims are typical of the Class members' claims in that they arise from Defendants' uniform conduct and are based on the same legal theories as Class members' claims.

71.     Plaintiff and all putative Class members have also necessarily suffered actual damages in addition to statutory damages, as all Class members suffered an invasion of the same legally protected substantive statutory interest, suffered a trespass and temporary occupation upon their telephone and telephone line, spent time tending to Defendants' unwanted calls, lost space on their devices, and suffered a nuisance and an invasion of their privacy.

72.     Plaintiff has no interests antagonistic to, or in conflict with, the Class.

73.     Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent himself and the Class.

74.     Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class as a whole.

75.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

76.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

77.     Common questions will predominate, and there will be no unusual manageability issues.

### DNC CLASS

78.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed class, defined as follows:

> Plaintiff and all persons within the United States to whose telephone number Defendant ADT LLC placed (or had placed on its behalf), since November 23, 2012, two or more telephone calls in a twelve-month period as part of its 2G to 3G conversion campaign.

> ("DNC Class")

79.     Excluded from the classes are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families.

80.     The Class members for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

81.    The exact number and identities of the persons who fit within the classes are ascertainable in that Defendants maintain written and electronically stored data showing:

      a.  The time period(s) during which Defendants placed their telephone calls;

      b.  The telephone numbers to which Defendants placed their telephone calls;

      c.  Which telephone calls were placed as part of the 2g to 3g campaign;

82.    The Class consists of thousands, if not millions, of individuals nationwide.

83.    There are common questions of law and fact affecting the rights of the Class members, including, *inter alia*, the following:

      a.  The purpose(s) of Defendants' calls;

      b.  Whether Defendants had proper procedures to maintain an internal "do not call" list;

      c.  Whether Defendants had proper procedures to honor a "do not call" list;

      d.  Whether Defendants trained their personnel or vendors on the existence or use of any internal "do not call" list;

e. Whether Defendants should be enjoined from engaging in such conduct in the future.

84. Plaintiff is a member of the class in that Defendants placed at least two telemarketing calls to his telephone in the absence of proper procedures.

85. Plaintiff's claims are typical of the Class members' claims in that they arise from Defendants' uniform conduct and are based on the same legal theories as Class members' claims.

86. Plaintiff and all putative Class members have also necessarily suffered actual damages in addition to statutory damages, as all Class members suffered an invasion of the same legally protected substantive statutory interest, suffered a trespass and temporary occupation upon their telephone and telephone line, spent time tending to Defendants' unwanted calls, lost space on their devices, and suffered a nuisance and an invasion of their privacy.

87. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

88. Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent himself and the Class.

18

89.    Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes as a whole.

90.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

91.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

92.    Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the ATDS Class)

93.    Plaintiff and the proposed Class incorporate the foregoing allegations as if fully set forth herein.

94.    Defendants placed numerous telephone calls to Plaintiff and Class members.

95.    These calls all used an automatic telephone dialing system.

96.    The calls were not made for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

97.    All of the calls were telemarketing, in that one of the purposes of the calls was to schedule an appointment with customers in hopes of "upselling" those customers to upgrade to a more expensive alarm system.

98.    None of the calls were placed with prior express written consent of the called party.

99.    Furthermore, calls made after the called party asked Defendants to "stop calling" were made without any form of consent.

100.    Plaintiff and Class members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

101.    Plaintiff and Class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone call, pursuant to 47 U.S.C. § 227(b)(3).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the DNC Class)**

102.    Plaintiff and the proposed Class incorporate the foregoing allegations as if fully set forth herein.

103.    The Telephone Consumer Protection Act required the Federal Communication Commission to initiate a rulemaking proceeding concerning the

need to protect residential telephone subscribers privacy rights to avoid receiving telephone solicitations to which the object. 47 U.S.C. § 227(c)(1).

104.   The Telephone Consumer Protection Act required the Federal Communication Commission to conclude such proceedings by issuing regulations to implement methods and procedures for protecting such privacy rights in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers. 47 U.S.C. § 227(c)(2).

105.   In doing so, the Federal Communications Commission determined that the most efficient, effective, and economic manner to protect such privacy rights was to require all entities engaging in telemarketing, whether or not such calls constitute telephone solicitations, to establish and actually implement and honor specific procedures and have those procedures in place at the time of initiating any telephone call to residential telephone numbers for telemarketing purposes. 47 C.F.R. § 64.1200(d).

106.   In 2003, the FCC extended these same protections to wireless subscribers. 47 C.F.R. § 64.1200(e).

107.   The Federal Communications Commission's regulations provide:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made

by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d).

108.   The procedures required must include the following:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the

person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47  C.F.R. § 64.1200(d).

109.   Defendants failed to institute the procedures required by 47 C.F.R. § 64.1200(d).

110.   Defendants placed numerous telephone calls to Plaintiff and Class members.

111.   All of the calls were telemarketing, in that one of the purposes of the calls was to "upsell," or to schedule an appointment with customers in hopes of "upselling," those customers to upgrade to a more expensive alarm system.

112.   Defendants did not document do not call requests made in their 2G to 3G conversion calls.

113.   Defendants did not honor do not call requests made in their 2G to 3G conversion calls.

114.   Defendants were required to maintain and honor such a list pursuant to 47 CFR 64.1200(d)(3) and (6).

115.   Defendants made these calls despite not having trained their personnel and vendors responsible for making these telemarketing calls on the existence and use of their internal "do not call" list, including the requirement to document and honor do not call requests.

116.   Defendants were required to train their personnel and vendors pursuant to 47 CFR 64.1200(d)(2).

117.   Accordingly, Defendants' telephone calls violated 47 U.S.C. § 227(c).

118.   Plaintiff and Class members are entitled to an award of up to $500 in statutory damages for each call, pursuant to 47 USC § 227(c)(5)(B).

119.   Plaintiff and Class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone call, pursuant to 47 U.S.C. § 227(c)(5)(C).

## JURY DEMAND

120.   Plaintiff requests a trial by jury of all claims that can be so tried.

## DOCUMENT PRESERVATION DEMAND

121.   Plaintiff hereby demands that the Defendant take affirmative steps to preserve all recordings, data, emails, recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, telemarketing, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them.  These materials are very likely relevant to the litigation of this claim.  If Defendant is aware of any third party (e.g. a dialing vendor) that has possession, custody or control of any such materials, plaintiff demands that Defendant request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Bradley Estey, individually and on behalf of the Class, prays for the following relief:

A.      An order certifying the Classes as defined above, appointing Plaintiff

Estey as the representative of the Classes, and appointing his counsel as Class Counsel;

B.     An order declaring that Defendants' actions, as set out above, violate 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c);

C.     An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein or further use of autodialing technology to call cellular telephone numbers;

D.     An award of statutory damages for violations of 227(b);

E.     An award of treble damages for violations of 227(b);

F.     A separate award of statutory damages for violations of 227(c);

G.     A separate award of treble damages for violations of 227(c);

H.     An award of reasonable attorneys' fees and costs; and

I.     Such other and further relief that the Court deems reasonable and just.


Respectfully submitted,

**SKAAR & FEAGLE, LLP**

by:    */s/ Justin T. Holcombe*
         Justin T. Holcombe
         Georgia Bar No. 552100
         jholcombe@skaarandfeagle.com
         Kris Skaar
         Georgia Bar No. 649610
         kskaar@skaarandfeagle.com
         133 Mirramont Lake Drive
         Woodstock, GA  30189
         770 / 427-5600
         404 / 601-1855 fax

         James M. Feagle
         Georgia Bar No. 256916
         jfeagle@skaarandfeagle.com
         Cliff R. Dorsen
         Georgia Bar No.149254
         cdorsen@skaarandfeagle.com
         2374 Main Street
         Suite B
         Tucker, GA 30084
         404 / 373-1970
         404 / 601-1855 fax

           Jeremy M. Glapion
           **THE GLAPION LAW FIRM, LLC**
           1704 Maxwell Drive
           Wall, New Jersey 07719
           Tel: 732.455.9737
           Fax: 732.709.5150
           jmg@glapionlaw.com

           *Pro Hac Vice*