# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| BRADLEY ESTEY,<br><br>   Plaintiff,<br><br>vs.<br><br>ADT LLC,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action File<br>) No. 1:16-CV-03141-AT<br>)<br>)<br>)<br>)<br>)<br>) |

**ADT LLC'S**
**RESPONSES TO PLAINTIFF'S**
**FIRST REQUESTS FOR PRODUCTION**

Defendant ADT LLC ("ADT"), by and through undersigned counsel, hereby provides the following answers to Plaintiff Bradley Estey's First Request for Production of Documents, as follows:

**PRELIMINARY STATEMENT**

The following responses to Plaintiff's First Set of Requests for Production ("Responses") are based upon the facts and information presently known and available to ADT. Discovery and investigation are still ongoing and may disclose additional facts, add meaning to known facts, establish entirely new factual conclusions, establish entirely new legal contentions, or possible lead to additions, variations, or changes to these Responses. Without being obligated to do so, ADT

1

**external project documents. Additional project documents are being produced in conjunction with these responses and will be exchanged upon the Court's entry of ADT's motion for a protective order.**

**REQUEST NO. 18:** All DOCUMENTS and/or ESI RELATING TO directions, incentives, commission statements, employees logs, agent logs, or any other DOCUMENTS and/or ESI referring to or RELATING TO upselling consumers premium ADT systems, such as ADT pulse. This specifically includes, but is not limited to, DOCUMENTS and/or ESI (including emails) discussing the use of the 2G to 3G conversion campaign to upsell premium ADT products such as ADT pulse.

**RESPONSE:** **ADT objects to the phrase "use of the 2G to 3G conversion campaign to upsell premium ADT products such as ADT pulse" as vague, ambiguous and argumentative. The FCC decided to allow private cellular telephone companies to start decommissioning and shutting down 2G cellular towers. This shut down (the bulk of which will happen at the end of 2016 when AT&T shuts down its towers) will affect a large majority of ADT's alarm services customers that rely on a 2G cellular communicator to transmit alarm signals to ADT's monitoring centers. Specifically, the shutdown will prevent ADT from delivering the very safety-related alarm monitoring service**

(including the ability to send police and/or fire personnel in response to alarm signal received) its customers contract for, expect to receive, and trust to serve them in an emergency when they may not be able to personally call for help. ADT, as a result, was required to notify its customers of this critical safety issue and embarked on a campaign to replace affected customers' communicators with different and ultimately reliable technology.  ADT therefore objects to the extent this request implies that ADT embarked on this campaign as a money-making venture to charge its customers additional fees in order to "upgrade" their equipment.

ADT further objects because the request seeks information about any and every alleged attempt by ADT to sell its products.  As discussed, ADT offered its affected 2G customers free replacement 3G radios as a part of its 2G/3G campaign.  Even limiting this request to the 2G/3G campaign it is still overbroad and irrelevant because Plaintiff never scheduled a service appointment with ADT to replace his 2G radio.  As a result, whatever may have occurred during such service appointments with other ADT customers is wholly irrelevant to Plaintiff's TCPA claim against ADT in this putative class action.

ADT further objects because the request seeks information related to activities that has nothing to do with telephone calls or how they are made. That conduct, for instance, could include direct mailing, door-to-door sales, and in-person service appointments, none of which are governed by the TCPA.

**REQUEST NO. 19:** All DOCUMENTS and/or ESI RELATING TO the revenue generated from sales of premium ADT systems, such as ADT Pulse, during 2G to 3G conversion service appointments.

**RESPONSE:** ADT objects to this request because it seeks irrelevant information that is not proportional to the claims at issue and it is argumentative. Plaintiff never scheduled a service appointment with ADT to replace his 2G radio and whatever may have occurred during such service appointments with other ADT customers is wholly irrelevant to the Plaintiff's TCPA claim against ADT in this putative class action. ADT further objects because the request seeks information related to activities that has nothing to do with telephone calls or how they are made, the request focuses on "appointments" and not telephone calls. An "appointment" is an invited face-to-face encounter which has no relevance whatsoever to any alleged TCPA violation.

**REQUEST NO. 20:** All financial statements, audited and unaudited,

- 23 -

**RESPONSE:** **ADT did not assert any affirmative defenses.**

DATED this 21st day of November, 2016.

        Respectfully submitted,

        THE GODSEY FIRM, L.L.C.

       By: /s/ J. Gregory Godsey
        J. Gregory Godsey
        Georgia Bar Number 298577
        3985 Steve Reynolds Boulevard
        Building D
        Norcross, GA  30093
        Telephone: 404-582-0001
        Facsimile:  404-869-0856
        ggodsey@thegodseyfirm.com

        *Attorneys for Defendant*
        *ADT LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| BRADLEY ESTEY,<br><br>  Plaintiff,<br><br>vs.<br><br>ADT LLC,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action File<br>)  No. 1:16-CV-03141-AT<br>)<br>)<br>)<br>)<br>) |

### ADT LLC'S
### ANSWERS TO PLAINTIFF'S
### FIRST SET OF INTERROGATORIES

Defendant ADT LLC ("ADT"), by and through undersigned counsel, hereby provides the following answers to Plaintiff Bradley Estey's First Set of Interrogatories, as follows:

### PRELIMINARY STATEMENT

The following responses to Plaintiff's First Set of Interrogatories ("Responses") are based upon the facts and information presently known and available to ADT. Discovery and investigation are still ongoing and may disclose additional facts, add meaning to known facts, establish entirely new factual conclusions, establish entirely new legal contentions, or possible lead to additions, variations, or changes to these Responses. Without being obligated to do so, ADT

1

7836590

lawsuit. Specifically, the phrase "calls or service appointments for upgrading from 2G to 3G cellular technology" encompasses conduct that may have nothing to do with telephone calls or how they are made, and therefore nothing to do with the TCPA violation alleged in Plaintiff's lawsuit. That conduct, for instance, could include direct mailing, door-to-door sales, and in-person service appointments, none of which are relevant to the TCPA.

Subject to these objections, there were no specific "policies" created with respect to the 2G-3G project. ADT directs Plaintiff to the contractual scope of work with iPacesetters and iPacesetters' 2G/3G campaign scripts that were produced in conjunction with ADT's Initial Disclosures. Requirements of existing ADT policies regarding Contact Compliance, specifically including compliance with the TCPA, were incorporated within the scope of sourcing and other internal and external project documents. Additional project documents are being produced in conjunction with these responses upon the Court's granting of ADT's motion for a protective order.

**INTERROGATORY NO. 11:** IDENTIFY in U.S. Dollars the revenue generated to Defendant from upselling customers to premium systems, such as ADT Pulse, resulting from appointments to provide existing customers free upgrades from 2G to 3G systems.

7836590

**ANSWER:** ADT objects to this request because it seeks irrelevant information that is not proportional to the claims at issue and it is argumentative. First, as evidenced in the project documents, scopes of work, and 2G/3G campaign contract documents, the option to have ADT replace an existing 2G radio with a 3G radio, or purchase an ADT Pulse system (which had 3G radio built into the panel) was up to the customer. Plaintiff's implication that ADT required existing customers to purchase additional equipment in order to make their alarm systems 3G compatible is inaccurate and objectionable. Second, Plaintiff never scheduled a service appointment with ADT to replace his 2G radio, and whatever may have occurred during such service appointments with other ADT customers is wholly irrelevant to the TCPA claims Plaintiff asserts against ADT in this purported class action. ADT further objects because the interrogatory seeks information related to activities that has nothing to do with telephone calls or how they are made. The interrogatory focuses on "appointments" and not telephone calls. An "appointment" is an invited face-to-face encounter which has no relevance whatsoever to any alleged TCPA violation.

**INTERROGATORY NO. 12:** IDENTIFY any training, directions, incentives, commissions, promises, or threats made or given to Defendant's

- 24 -

7836590

employees, representatives, agents, or contractors to encourage the upsell of premium ADT systems, such as ADT Pulse, during the transition of said customers from 2G to 3G systems.

**ANSWER:** **ADT objects to the phrase "during the transition" as vague, ambiguous and undefined. ADT further objects to the use of the terms "threats" and "upsell" as argumentative and unsupported. ADT further objects because the interrogatory seeks information related to activities that has nothing to do with telephone calls or how they are made, the only conduct relevant for purposes of the TCPA violations Plaintiff alleges in this lawsuit.**

**Subject to these objections and consistent with ADT's understanding of the request, ADT states that it did not train, direct, incentivize, commission, promise, or threaten its employees, representatives, agents, or contractors to encourage the upsell of premium ADT systems, such as ADT Pulse, during ADT's 2G/3G campaign.**

**INTERROGATORY NO. 13:** IDENTIFY any internal communications, strategy discussions, sales or marketing reports, data projections, goal sheets, financial statements, or any other internal document or presentation which relates the upselling of existing customer systems to premium systems, such as ADT Pulse, on service calls for the 2G to 3G conversion project.

7836590

**ANSWER:** ADT objects to this interrogatory because it seeks irrelevant information that is not proportional to the claims at issue and it is argumentative. Plaintiff never scheduled a service call with ADT to replace his 2G radio and therefore the request is wholly irrelevant to the claims he asserts against ADT in this lawsuit. ADT further objects because the interrogatory seeks information related to activities that have nothing to do with telephone calls or how they are made, the only conduct relevant for purposes of the TCPA violations Plaintiff alleges in this lawsuit. Indeed, the interrogatory focuses exclusively on "service calls," not telephone calls. A "service call" implies an invited face-to-face encounter between an ADT technician and a customer, and as such has no relevance whatsoever to any alleged TCPA violation.

**INTERROGATORY NO. 14:** Describe the POLICIES RELATING TO YOUR maintenance and treatment of records of prior express consent, specifically including YOUR treatment of any revocation of consent and/or "do not call" requests, YOUR treatment of telephone numbers on the national "do not call" registry, and describe any DOCUMENTS containing this information.

**ANSWER:** ADT's DNC Policies will be produced upon the Court's entry of ADT's motion for protective order.

- 26 -

7836590

**ANSWER:**

**ADT objects to Interrogatory No. 16 as unduly burdensome in that it seeks the identification of legal counsel and affiliated legal personnel. Subject to and without waiving its objections, ADT responds that these are the answers of Defendant ADT and not the responses of any individual person. The responses were drafted by ADT defense counsel, Shook, Hardy & Bacon, L.L.P., based on information provided by ADT's in-house legal department, which information in turn was collected from numerous databases, sources and individuals within the Company. The answers, once finalized, were verified by a duly designated representative as required by the Rules.**

DATED this 21st day of November, 2016.

                                          Respectfully submitted,

                                        THE GODSEY FIRM, L.L.C.

                                      By: /s/ J. Gregory Godsey
                                            J. Gregory Godsey
                                            Georgia Bar Number 298577
                                            3985 Steve Reynolds Boulevard
                                            Building D
                                            Norcross, GA  30093
                                            Telephone: 404-582-0001
                                            Facsimile:  404-869-0856
                                            ggodsey@thegodseyfirm.com

                                            *Attorneys for Defendant*
                                            *ADT LLC*

7836590