IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| BRADLEY ESTEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File |
| v. | ) | No.  1:16-CV-03141-AT |
| | ) | |
| ADT LLC, | ) | |
| IPACESTTERS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff Bradley Estey has moved to certify a class [DE 59] based on a common issue that is plainly and demonstrably false with respect to the entire class he proposes to represent.  Last term, the Supreme Court stated when a plaintiff seeks to certify a class that presents a "fatal similarity," that undermines the asserted cause of action for the class as a whole, the "courts should engage that question as a matter of summary judgment, not class certification." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016).  Accordingly, defendants now, in opposition to Mr. Estey's class certification motion, move the Court for summary judgment because there is no genuine issue of fact justifying litigation of the common question on

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

which Mr. Estey grounds his class, and defendants are entitled to judgment on it as a matter of law.

## BACKGROUND

Mr. Estey brought this action last year on the allegation that ADT had violated Section 227(b) of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b), because ADT had allegedly called his cell phone with an autodialer. After nearly a year of discovery, in which Mr. Estey took not one deposition, Mr. Estey correctly concluded that ADT had not, in fact, called him with an autodialer in violation of Section 227(b).

Undeterred, Mr. Estey amended his complaint to state only a claim for a violation of Section 227(c) of the TCPA, which requires a telemarketer to have certain do-not-call policies and procedures in place before beginning a telemarketing call campaign. In fact, ADT and codefendant iPacesetters both implemented comprehensive do-not-call policies and procedures many years ago. Mr. Estey's Section 227(c) claim has no basis whatsoever in fact, and the case on which he relies, *Simmons v. Charter Comms., Inc.*, 222 F. Supp. 3d 121, 139-41 (D. Conn. 2016), *aff'd*, __ Fed. Appx. __, 2017 WL 1289942 (2d Cir. 2017), here requires an award of summary judgment to both defendants.

-2-

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

## FACTS

Defendants refer the Court to the accompanying Statement of Material Facts ("SOF") submitted with this motion for a complete statement of the facts relevant to this motion. The summary below cites to the supporting paragraphs of the SOF, and by reference to the record evidence offered there.

In 2013, 1.6 million ADT customers had alarm panels that communicated with ADT's monitoring centers via wireless transmitters that operated on the 2G wireless telephone networks. SOF 44, 46. The telephone companies decided to shut down the 2G wireless network by the end of 2016 so that they could reallocate the 2G wireless spectrum for other purposes. SOF 41. This decision ultimately required ADT to replace the 2G radio transmitters in a million homes across the country – a mammoth undertaking that ultimately cost ADT over $185 million and required three years to complete. SOF 42-45, 55.

ADT used many approaches to schedule service visits for its 2G customers to replace their transmitters, including letters, bill inserts, telephone calls, and in-person visits. SOF 46-48. ADT began calling customers with 2G transmitters in October 2014. SOF 50. The importance of replacing these transmitters – a critical component in the alarm panels of over a million ADT customers – cannot be overstated. If ADT had been unable to replace all 2G transmitters before the

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

shutdown, ADT would have been unable to provide the security and life-safety monitoring services for which its customers contracted, and would have been overwhelmed in 2017 with service calls from 2G customers with alarm systems that no longer connected to ADT's monitoring centers. SOF 45.

ADT replaced the 2G transmitters for free, at substantial cost to ADT. SOF 43, 55. In the initial phases of the 2G conversion campaign, ADT offered customers the option of upgrading their alarm panels to ADT's smart "Pulse" alarm panel for an added cost. SOF 49. Because that offer might have been viewed as a telemarketing activity, ADT treated the calls placed to 2G customers in these earlier phases as telemarketing calls for the purpose of the TCPA. SOF 50. As it pertains to Mr. Estey's claims, that means that ADT scrubbed all call lists to remove all numbers from persons who had asked not to be called for telemarketing purposes, as required by Section 227(c) of the TCPA, and ADT recorded all requests not to be called on its internal do-not-call list (the "iDNC"). SOF 50.

By early 2016, it became clear that many 2G customers were not responding to ADT's efforts to replace their 2G transmitters, and that ADT would be required to accelerate its conversion rate to replace them all by the end of the year. SOF 51. To that end, ADT made a decision prior to May 2016, to restructure the 2G call campaign. SOF 52. First, ADT would stop offering paid Pulse upgrades as part of

-4-

the campaign – a change that would remove the perceived telemarketing aspect of the calls, and enable ADT to place calls to all of its 2G customers, including 2G customers on the do-not-call lists. SOF 52. Second, ADT would *pay* resistant customers to schedule service calls to replace 2G transmitters. SOF 54. To effect these changes, on May 6, 2016, ADT revised its call scripts to remove the offers of paid Pulse upgrades. SOF 53. At the same time, ADT stopped scrubbing of do-not-call customers, consistent with the changed nature of the calls. SOF 52, 53.

For the telephone call part of the 2G conversion campaign, ADT engaged codefendant iPacesetters to place calls to 2G customers, and ADT also placed calls from its own call centers. Both companies implemented comprehensive written TCPA compliance policies no later than 2007, seven years before placing any calls related to the 2G campaign. SOF 1-39. Before ADT hired iPacesetters to place calls in ADT's behalf, ADT engaged a leading contract compliance audit firm to confirm that iPacesetters complied in all respects with all state and federal telemarketing laws and regulations, including Section 227(c) of the TCPA. SOF 22, 23. That independent audit confirmed that iPacesetters complied in all material respects with the telemarketing laws general, and with the do-not-call requirements of Section 227(c) in particular. SOF 23.

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

## ARGUMENT

Mr. Estey's second amended complaint reduces his claims against defendants to a single contention: That defendants violated the TCPA requirement, *see* 47 U.S.C. § 227(c), that telemarketers have minimum do-not-call policies and procedures in place before placing telemarketing calls. *See* Am. Compl. at 16-17, ¶¶ 77-85 [DE 55]. As Mr. Estey's class certification motion recognizes: "In order to prevail on a 227(c) TCPA claim, 'the plaintiff must establish that the calls he or she received were initiated prior to the implementation of proper procedures,'" set forth in the FCC rule (47 CFR § 64.1200(d)) that implements Section 227(c)'s requirements. *See* Mot. for Class Cert. at 5 (quoting *Simmons*, 222 F. Supp. 3d at 139) [DE 59-1].

Mr. Estey's claim fails because both defendants in fact devised and implemented compliant procedures long before the 2G call campaign began. "If a defendant can show that it had instituted the proper procedures, plaintiff's claim under subsection (d) must fail for lacking an essential element of the claim." *Simmons*, 222 F. Supp. 2d at 131. In Part I, defendants show that they have both complied with Section 227(c)'s do-not-call procedures. In Part II, defendants show that the only support that Mr. Estey offers for his contention – his own call experience – does not support his claim on the facts or as a matter of law.

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

# I. Both Defendants Instituted Proper Do-Not-Call Procedures Before Placing Telemarketing Calls In The 2G Campaign.

In *Simmons*, the case on which Mr. Estey rests his entire claim, the court awarded summary judgment to the defendant on a Section 227(c) claim because the defendant showed that it had implemented proper do-not-call procedures before placing telemarketing calls to the plaintiff. *See Simmons*, 222 F. Supp. 3d at 139-41. *Simmons* compels the same result in this case.

Mr. Estey alleges a violation of 47 C.F.R. § 64.1200(d), the FCC regulation that implements Section 227(c). *See* Am. Compl. at 14-16, ¶¶ 75-77 [DE 55]. It states: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). The regulation defines "procedures" by reference to six categories of required practices. *See id*. Mr. Estey contends that defendants failed to institute three of them before starting ADT's 2G call campaign:

> **(2) Training of personnel engaged in telemarketing.** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> **(3) Recording, disclosure of do-not-call requests.** If a person or entity making a call for telemarketing purposes (or on whose behalf

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. ...

**(6) Maintenance of do-not-call lists.** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

Mot. for Class Cert. at 4 (*citing* 47 C.F.R. § 64.1200(d)) [DE 59-1]. As noted above, "If a defendant can show that it had instituted the proper procedures, plaintiff's claim under subsection (d) must fail for lacking an essential element of the claim." *Simmons*, 222 F. Supp. 2d at 131.

In fact, both ADT and iPacesetters each instituted these procedures years before the 2G call campaign began in October 2014.[1]

---

[1]  In fact, both defendants are compliant with all six of the requirements set forth in 47 C.F.R. § 64-1200(d)(1)-(6), *see* SOF 4-5 (written DNC policies available), SOF 27-28 (caller identification), SOF 29-30 (affiliates), but here discuss only the three that Mr. Estey contends that defendants violated.

-8-

### A. Defendants have implemented comprehensive do-not-call training policies and procedures.

ADT trains all personnel involved in any aspect of telemarketing about the existence and use of ADT's do-not-call list. SOF 6. ADT has detailed, comprehensive written procedures that implement this requirement, including ADT's Do-Not-Call Policies & Procedures. SOF 7. ADT requires all of its employees who engage in any aspect of telemarketing to be trained with these materials, and to take and pass tests to demonstrate their proficiency with them, before engaging in any telemarketing activities. SOF 8. Before an ADT employee is permitted to work in any area related to telemarketing, he must complete a prescribed series of training programs. SOF 9-11.

- New hires go through in a comprehensive training program with a large group of experienced outbound telemarketing agents. In these initial programs, the new hires receive copies of the Do-Not-Call Policies & Procedures and ADT's other training materials, and they are required to learn their contents. SOF 9.

- New hires then complete a separate "Bridge Bay" training devoted to ADT's do-not-call policies and practices, in which ADT pairs small groups of telemarketing agents with a dedicated trainer while they handle their first week of telemarketing calls. During this training, the new hires take an examination that tests their command of ADT's do-not-call materials. Trainers continue to teach these policies with the new hires throughout the length of the training. SOF 10.

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

- Each agent must sign an acknowledgement form that verifies that the agent has read and understands ADT's telemarketing policies and procedures. SOF 11.

Each agent must continue to participate in prescribed refresher trainings periodically after, SOF 12, and be recertified as to their mastery of the do-not-call rules every three months. SOF 13. No ADT employee is permitted to work in telemarketing without the proper training, testing, certification, and periodic recertification described above. SOF 8 - 13.

ADT independently verified that iPacesetters also complies with the training requirements of Section 64.1200(d) before hiring the company to place calls in its behalf. ADT engaged a leading contact compliance audit firm, CompliancePoint, to confirm that iPacesetters complied in all respects with all state and federal telemarketing laws and regulations, including Section 227(c) of the TCPA. SOF 22, 23. After reviewing iPacesetters' training materials and practices, the audit found that iPacesetters "agents are specifically trained on honoring DNC requests," and that "iPacesetters' agents and employees are aware of and trained on the requirement to accept and honor a consumer's company-specific Do Not Call request." SOF 22, 23. The audit concluded that iPacesetters is compliant with the regulation. *Id*.

This conclusion is clearly correct. iPacesetters maintains training practices that are equivalent in all respects with ADT's training policies and procedures set

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

forth in the preceding paragraphs, except that iPacesetters requires its employees to be recertified every six months. SOF 14. Like ADT, iPacesetters strictly adheres to these training practices with its telemarketing employees; no iPacesetters employee is permitted to work in telemarketing without the proper training, testing, certification, and periodic recertification set forth above. SOF 15.

Both defendants implemented these training practices at least seven years before the 2G call campaign began. Both comply with 47 C.F.R § 64.1200(d)(2).

**B.     Defendants have implemented comprehensive procedures for recording do-not-call requests.**

ADT has similarly robust procedures for recording do-not-call requests. It is ADT's policy and practice to record and honor all requests that a telephone number be placed on ADT's do-not-call list for telemarketing purposes. SOF 16. ADT has maintained its internal Do Not Call ("iDNC") database since the early 1990's, following the enactment of the TCPA in 1991. SOF 1. To assist ADT in implementing this policy, ADT engaged (long before the beginning of the 2G call campaign) two well-regarded contact compliance service providers, PossibleNow and Gryphon Networks, to support its telemarketing compliance program. SOF 17. Both providers maintain complete Do Not Call databases, which include (i) up-to-date do-not-call databases for all states that maintain such databases; (ii) the up-to-

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

date federal Do Not Call database; (iii) the up-to-date Canadian Do Not Call database; and (iv) ADT's up-to-date iDNC database. SOF 17.

ADT maintains a number of redundant pathways to ensure that ADT's iDNC lists are dynamically and automatically updated whenever a customer asks to be placed on ADT's do-not-call list, and to ensure that the number is immediately and automatically blocked from further marketing calls. SOF 19. ADT employees add telephone phone numbers to the iDNC database using any of the following mechanisms:

- *Gryphon Core Phone:* All ADT sales employees must place *all* outbound marketing calls through a Gryphon Networks manual dialer platform. When a called consumer asks to be placed on the do-not-call list, the ADT adds the called number to the iDNC with a keystroke. The number is instantaneously added to the iDNC and Gryphon Core Phone automatically blocks all further calls to the number. Agents may also manually enter other telephone numbers into the iDNC on the Gryphon platform so that agents may include numbers the customers might provide in addition to the called number.

- *Gryphon Core Phone web portal:* ADT also deploys a web-based data portal, accessible on an enterprise-wide basis via ADT's intranet, through which ADT employees may add telephone numbers to the iDNC.

- *Email:* ADT employees (and consumers) can add telephone numbers by emailing them to ADT's dedicated DNC Complaint team, located in Jackssonville, Florida, at DNCComplaint@adt.com. Members of the ADT DNC complaint team then add the numbers to the iDNC using the Gryphon Core Phone web portal.

- *Telephone:* ADT employees and consumers alike can add telephone numbers by calling ADT's dedicated DNC Complaint team at (877) 377-7374. DNC

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

Complaint team members then add the numbers to the iDNC using the Gryphon Core Phone web portal.

- *Daily Dialer Update:* For outbound calls permitted to be made using a dialer, outbound calling agents mark dialer records throughout the day's calling campaign of telephone numbers requested to be blocked. Those numbers are pulled from the dialer at the end of the campaign day and pushed securely to PossibleNow and Gryphon Networds to be added to the ADT iDNC lists hosted by each provider.

SOF 19. As described above, these mechanisms automate much of the work of adding numbers to the iDNC list and keeping the iDNC list current on a daily basis to minimize the possibility that ADT might inadvertently call a consumer who has asked to be placed on the list. SOF 19.

In addition, the PossibleNow and Gryphon Networks iDNC lists are synchronized every Saturday through a secure data exchange process to ensure that both lists are fully synchronized and updated. SOF 20. Finally, all call lists for outbound telemarketing campaigns are pre-scrubbed against all do-not-call databases maintained by PossibleNow or Gryphon Networks to remove all numbers on their lists before any outbound call is placed. SOF 21. Outbound telemarketing calls are required to be made within 24 hours of a scrub and call lists are re-scrubbed on a nightly basis to capture any new telephone numbers that might have been added to any state, federal, Canadian or internal ADT do-not-call list that day. SOF 21.

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

As noted in the previous section, where (as here) ADT engages the services of a vendor to place calls in its behalf, ADT requires the vendor to be compliant in all respects with ADT's do-not-call policies and practices, and requires the vendor to submit to a compliance audit of the vendor's TCPA policies and procedures. SOF 22. The iPacesetters audit shows that iPacesetters was fully compliant in all material respects with the requirement that it have procedures in place to record and honor do-not-call requests. SOF 23. Specifically, the audit found:

> The interviews revealed iPacesetters' agents and employees are aware of and trained on the requirement to accept and honor a consumer's company-specific Do Not Call request. When agents receive a DNC request from a consumer on an inbound call they disposition the call accordingly in the Avaya system. This results in the consumer's telephone number being added to the applicable DNC list during the nightly synchronization and scrub. Avaya also records the date the DNC request was made. If a DNC request is made during an outbound call, the agents are trained to disposition the lead as a DNC in the iPacesetters dialer, SER. SER maintains the date the DNC request was made. Avaya and SER are synchronized nightly. Suppression is performed against the internal DNC list on a nightly basis. DNC requests can be added to the client's internal DNC lists on a daily basis. iPacesetters will send the client the updated internal DNC file based on his/her preference (daily, weekly, or at the end of the program).

SOF 23, *quoting* CompliancePoint Audit, **Ex. D** to DiGiorgio Dec.

Moreover, the customer call lists that ADT provided to iPacesetters were generated and updated using the same procedures described in the preceding

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

paragraphs so that iPacesetters worked at all times from freshly-scrubbed call lists. SOF 24. This ensures that the safeguards stated in the preceding paragraphs also ensured that iPacesetters could not place calls to customers who had asked to be placed on the do-not-call list. Finally, as the iPacesetter audit confirmed, iPacesetters also has comprehensive policies and procedures of its own in place for honoring and recording all do-not-call requests that it receives while placing telemarketing calls, and those are stated in its Corporate DNC Policy. SOF 26.

Both defendants have taken steps to ensure not only that they are compliant with the policies and procedures required by 47 U.S.C. § 64.1200(d)(3), but also to make those procedures self-executing to the extent possible to ensure that they are fully implemented for every caller who asks not to be called.

### C. Defendants have implemented comprehensive procedures for maintaining do-not-call lists.

Finally, both defendants have compliant policies and procedures for maintaining their do-not-call lists. ADT maintains its do-not-call records and honors all do-not-call requests for at least five years from the time the request is made. SOF 31. iPacesetters maintains its do-not-call records indefinitely, and honors all do-not-call requests permanently. SOF 32.

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

**D.    Defendants expend substantial resources to implement their do-not-call procedures.**

As the above discussion shows, both defendants have mature do-not-call policies and procedures that each has fully implemented years before defendants began to call ADT's 2G customers in 2014.  SOF 33; SOF 38.  Defendants have described at length the ways in which each has implemented these procedures.  Both have committed substantial resources to their respective efforts to implement their do-not-call policies.

ADT, for its part, employs a full-time compliance manager and four full-time employees on a dedicated DNC Complaint team.  SOF 35.  ADT has committed senior corporate officers and managers to implement the policies, including an Associate General Counsel in ADT's Legal Department who devotes approximately thirty percent of his time on TCPA compliance matters; a Senior Corporate Counsel who devotes well over fifty percent of her time to contact compliance, most of which is devoted to TCPA compliance; and a full-time IT Security Manager who is responsible for managing all data maintenance and data exchanges with ADT's service providers.  SOF 36.

ADT also spends approximately $2 million annually on acquiring and maintaining contact compliance hardware and software, and has further spent and

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

continues to spend significant but unquantified sums in building and maintaining the IT infrastructure necessary to support ADT's contact compliance program and architecture. SOF 37. Like ADT, iPacesetters devotes substantial resources to the implementation of its do-not-call policies and practices. iPacesetters is a much smaller company than ADT, yet it invests significant sums in its compliance program on an annual basis, and projects that it will spend in excess of $600,000.00 on compliance in 2017. SOF 39.

  **E.**  **The Court must award summary judgment because defendants are compliant with 47 C.F.R. § 64.1200(d).**

  The facts stated above establish beyond dispute that both defendants are in all respects compliant with the FCC regulation implementing Section 227(c) of the TCPA. As *Simmons* recognizes, 47 C.F.R. § 64.1200(d) "simply requires the institution of certain procedures prior to the initiation of telemarketing calls." *Simmons*, 222 F. Supp. 3d at 131. A defendant violates the section "by failing to have the required procedures in place prior to the initiation of the calls." *Id., citing Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 632 (6th Cir. 2009). Once the defendant shows that it has implemented the required procedures, the court must award summary judgment because the plaintiff lacks "an essential element of the claim." *Id., following Charvat, supra*.

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

In *Simmons*, the defendants offered proof that they had implemented proper do-not-call policies before placing the calls at issue there. The plaintiff contended that the defendants must not have fully implemented the procedures because he was called despite his do-not-call request. *See id*. at 140. The court there concluded that in the absence of evidence that the defendants had not in fact implemented their do-not-call policies, no reasonable jury could find for the plaintiff on the Section 227(c) claim, and the court must in such cases award summary judgment to the defense for the plaintiff's failure to raise a genuine issue of material fact warranting a trial. *See id*. at 141. For the same reasons, the Court should grant this motion and award summary judgment to ADT and iPacesetters.

## II. Defendants' Calls To Mr. Estey Do Not Support His Claim.

In Mr. Estey's class certification motion, as in his complaint's allegations, Mr. Estey argues that his experience with the 2G call campaign supports an inference that defendants have not implemented proper do-not-call policies and procedures. His arguments fail for two separate reasons. First, they are wrong – nothing in his ADT calls suggests that defendants called Mr. Estey in violation of the do-not-call provisions of the TCPA and its implementing regulations. Second, the inferences by themselves are insufficient as a matter of law to support Mr. Estey's contentions.

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

For both reasons, the Court must find that Mr. Estey's claim lacks support, and grant defendants' motion.

## A. Defendants' calls to Mr. Estey did not violate the do-not-call rules.

Mr. Estey bases his entire case on his perceived mistreatment by ADT. But the calls defendants placed to Mr. Estey do not in any way prove a violation of the TCPA, including the do-not-call rules. ADT offers with this motion the call transcripts of each completed call that defendants placed to Mr. Estey. *See* Call Transcripts, **Exs. A-L** to the Declaration of Chris Frazier (**Ex. 5** to SOF). Mr. Estey does not allege that he had asked that his number be placed on ADT's iDNC prior to ADT's 2G campaign calls to him. Instead, Mr. Estey claims that he instructed ADT to stop calling him in a May 19, 2016, call, and that ADT violated the do-not-call rules by continuing to call him after that instruction.[2] *See* Am. Compl. at 5, ¶ 26 [DE 55]; *see also* Mot. for Class Cert. at 7 [DE 59-1]. That argument fails for a number of reasons.

_____

[2]  In fact, Mr. Estey offers the May 19 call as an "example" of what he claims are "multiple occasions" on which he "requested that calls stop." [DE 59-1 at 7; *accord* DE 55 at 5, ¶¶ 25-26.] But a review of the transcripts shows that the May 19 call was the *only* call in which he told an ADT operator to stop calling him about the need to replace his 2G transmitter. SOF 66. To the contrary: In his May 4 call, *Mr. Estey asked ADT to call him back later*. SOF 67. The call recording transcripts conclusively disprove Mr. Estey's claim that he told ADT operators on "multiple occasions" to stop calling him.

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

*First:*  Defendants placed the May 19 call to Mr. Estey two weeks *after* ADT

had stopped all telemarketing activity associated with the 2G call campaign.  SOF

62.  Because the call did not engage in telemarketing, ADT was not obliged to

conform the May 19 call, or any later call, to the do-not-call rules; those rules

apply only to telemarketing calls.  *See* 47 C.F.R. § 64.1200(d) (rule governs "any

call for telemarketing purposes"); *Dish Networks, LLC v. FCC*, 552 Fed. Appx. 1,

1 (D.C. Cir. 2014)("The TCPA regulates telemarketing practices").

*Second:*  Far from telling ADT not to call him, Mr. Estey instructed an ADT

operator on May 4 to call him back because he did not have the time to speak with

the operator on May 4.  SOF 67.  After telling the ADT operator that he wanted to

wait until the 2G shutdown was "imminent" before scheduling a service visit, the

operator said:

> OPERATOR:  Okay. So, we'd have to do a call back or we could check to see
> when that actual conversion is supposed to be imminent.

> ESTEY:  Yes.  Just whenever it (inaudible) let me know and I'll get a
> conversion, but right now I don't have time.

SOF 67.  Mr. Estey's May 4 statement *invites* further calls from ADT.

*Third:*  Mr. Estey's May 19 call does not ask the operator to place his number

on ADT's iDNC list.  In context, Mr. Estey asks only that ADT not call him again

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

regarding the 2G conversion, *not* that ADT stop calling him altogether:  In his words, "could you please stop calling me about it?"

> OPERATOR:  I am calling from ADT about the 2G 3G upgrade that needs to [be] changed out and we're just trying to schedule you an appointment, so we don't lose service with you.  * * *

> ESTEY: Okay.  All right.  And you guys have called me about this several times, and continue to send letters. I really don't want to do it right now. I'm not interested in doing it right now. So, could you please stop calling me about it?

> OPERATOR:  Sir, it's mandatory that we get this done before January of 2017 due to the fact that if we do not it will interrupt your services and you will not have any -- ADT will no longer have monitoring with your system.

> ESTEY:  Right, I understand that --

> OPERATOR:  Okay.

> ESTEY:  -- and I will get that done whenever I have time, but in the meantime, I don't want to have calls from you anymore.

> OPERATOR:  Yes sir.  I will notate it in the notes, sir.

SOF 61.

*Fourth:*  Mr. Estey makes no other statement in any of the other calls that might be construed as a demand that ADT stop calling him, or that he be placed on the iDNC list, SOF 66, and Mr. Estey in fact invites the operator to call back later, when the 2G sunset is more "imminent."  SOF 67.

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

*Fifth:* Nothing in the May 19 call has anything to do with telemarketing, as the excerpt quoted above makes clear. SOF 53, 61-62.

*Sixth:* None of the other calls that defendants placed to Mr. Estey beginning in April 2016 say anything at all that could possibly be construed as telemarketing. SOF 65. And as already noted, the calls placed after May 5 had been stripped of telemarketing content, SOF 53, and thus were not subject to the TCPA's do-not-call rules.

For each of these reasons, Mr. Estey errs in his presumption that ADT's calls to him evidence defendants' failure to implement proper do-not-call procedures. In fact, defendants have fully implemented proper do-not-call policies and procedures, and they followed them in their calls to Mr. Estey.

### B. Mr. Estey's experience is an insufficient foundation for the claim he asserts.

Finally, Mr. Estey's anecdotal justification for his claim is insufficient as a matter of law. The plaintiff in *Simmons* made exactly the same argument – that because he had received calls that allegedly violated the do-not-call rules, the defendants must not have do-not-call policies in place, or must not have implemented them. The court in *Simmons* rejected that argument and held that such proof, absent other corroborating evidence, was insufficient as a matter of law to

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

support a finding of a Section 227(c) violation: "Ultimately, absent more evidence, the fact that Empereon might have failed to properly record and honor Simmons' initial DNC request does not permit a jury to find that it failed to implement proper procedures." *Simmons*, 222 F. Supp. 3d at 140. The *Simmons* court reasoned:

> There are many reasons that Charter's customer service representative could have failed to record Simmons' January 9, 2015, DNC request. There is evidence to suggest that Simmons' request was not properly understood. ... It is also possible that the representative simply forgot     to record the request. In any event, evidence of a single violation of an entity's recording policy does not establish a complete failure to implement such a policy. In the absence of evidence sufficient to show that Empereon failed to implement its DNC policy, no reasonable jury could find for Simmons on his claim.

*Simmons* at 140-41 (citations omitted).

Mr. Estey's class certification motion offers *Simmons* as controlling authority, and ADT agrees.[3] *See* Mot. for Class Cert. at 5 [DE 59-1]. Mr. Estey's class certification motion shows that his sole factual predicate for his claims is the series of calls he received in ADT's 2G conversion campaign. *Simmons* holds that those calls, by themselves, cannot support his Section 227(c) claim as a matter of law. Because defendants have conclusively established that they did, in fact, have in place

---

[3]    *Simmons* is a district court opinion, but the Second Circuit affirmed it in a summary order that adopted the district judge's "thorough opinion." *See Simmons*, 2017 WL 1289942 at *1.

-23-

and implemented robust do-not-call policies and procedures that are in all respects compliant with all state and federal laws, including Section 227(c) of the TCPA and Section 64.1200(d), Estey cannot establish an essential element of his claim and defendants are entitled to judgment as a matter of law.

## CONCLUSION

The motion should be granted.

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

The undersigned certifies that this pleading has been prepared with Times New Roman font size 14 approved by Local Rule 5.1B.

Dated: July 7, 2017   THE GODSEY FIRM LLC

       /s/ J. Gregory Godsey_____
       J. Gregory Godsey
       ggodsey@thegodseyfirm.com
       Georgia Bar No. 298577
       3985 Steve Reynolds Boulevard
       Building D
       Norcross, Georgia 30093
       Tel: (404) 582-0001

       C. Sanders McNew (*Pro Hac Vice*)
       mcnew@mcnew.net
       McNEW P.A.
       2385 NW Executive Center Drive
       Suite 100
       Boca Raton, Florida 33431

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

Tel:  (561) 299-0257

Jason R. Scott (*Pro Hac Vice*)
jscott@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Tel: (816) 474-6550

*Counsel for Defendants*

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of July, 2017, the foregoing was presented to the Clerk of Court for filing and uploading to the CM/ECF system, and for service upon the following counsel of record:

Justin T. Holcombe
Kris Skaar
Skaar & Feagle, LLP
2374 Main Street
Suite B
Tucker, GA 30084

James M. Feagle                    Jeremy M. Glapion
Cliff R. Dorsen                    The Glapion Law Firm, LLC
Skaar & Feagle, LLP                1704 Maxwell Drive
2374 Main Street                   Wall, New Jersey 07719
Suite B
Tucker, GA 30084

This 7th day of July, 2017.


/s/J. Gregory Godsey_____
J. GREGORY GODSEY

The Godsey Firm, LLC ● 3985 Steve Reynolds Blvd., Bldg D ● Norcross, Georgia 30093 ● (404) 582-0001